IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICHARD EARL WILLIAMS, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:13-CV-03084-WSD-GGB |
| GEORGIA DEPARTMENT OF CORRECTIONS, | |
| Defendant. | |

## **FINAL REPORT AND RECOMMENDATION**

This is an employment discrimination action brought under Title VII of the Civil Rights Act of 1964. The Plaintiff, Richard Earl Williams, is an African-American male who used to work as a probation officer for the Georgia Department of Corrections ("GDC"). He was fired in 2012 after he refused to cut off his dreadlocks, which did not conform to a newly-enacted grooming policy for GDC employees. Williams contends that the GDC discriminated against him based on his sex, race, religion, and national origin, and retaliated against him for internal complaints of discrimination that he filed.

The GDC has moved to dismiss Williams's amended complaint, arguing that it fails to state a claim for relief (Doc. 9). After review, I **RECOMMEND** that the

motion to dismiss be **GRANTED**.[1]  Williams's sex discrimination claim is barred by Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084 (5th Cir. 1975) (en banc),[2] which holds that an employer does not violate Title VII by establishing different grooming policies for male and female employees.  Williams also has not sufficiently alleged that he was subjected to race discrimination or retaliation.  Finally, Williams's claims of religious and national-origin discrimination are barred by his failure to administratively exhaust those claims.

## I.   Williams's Complaint

Williams, an African-American male, used to work as a probation officer for the GDC.  (Doc. 6, Amended Complaint ¶¶ 12, 16).  He began wearing his hair in dreadlocks in 2004.  (Id. ¶ 29).  In June of 2010, Chief Vaughn Andrews directed him to get a haircut.  (Id. ¶¶ 17-18, 29).  Williams refused the order, saying that his hairstyle was an integral part of his religious beliefs and spiritual faith.  (Id. ¶ 19).  For the next two years, Williams continued to wear his hair in dreadlocks "despite subtle and not so

---

[1] Also pending is an earlier-filed motion to dismiss Williams's original complaint (Doc. 7).  Because the amended complaint is now the operative pleading, I **RECOMMEND** that the motion to dismiss the original complaint be **DENIED AS MOOT**.

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2

subtle communications" that management was not pleased with his appearance. (Id. ¶ 20). He filed internal grievances stating that the orders to cut his hair were discriminatory and that he was being subjected to a hostile work environment. (Id. ¶ 21).

In January of 2012, the GDC enacted a new grooming policy that prohibited male employees from wearing their hair below the top of the shirt collar. (Id. ¶¶ 22-23; Exh. D-1 at 4). The policy also specified that male employees could not adorn their hair in dreadlocks. (Id. ¶¶ 23-24; Exh. D-1 at 4). By contrast, female employees were allowed to wear dreadlocks and to have hair below the collar. (Id. ¶¶ 25-26; see Exh. D-1 at 4).

Once the new policy went into effect, Chief Andrews ordered Williams to leave work, get a haircut, and return within two hours. (Id. ¶ 36). Williams refused to do so and was issued a letter of reprimand. (Id. ¶ 37). Over the next several months, Williams continued to resist the new grooming policy and was subjected to escalating discipline, including a written directive on March 2 and a salary reduction on March 16. (Id. ¶¶ 38-39). Finally, on May 13, 2012, Williams was terminated for failing to comply with the grooming policy. (Id. ¶¶ 40-41).

Shortly before he was fired, Williams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id., Exh. A). In his charge,

3

he argued that the orders to cut his hair, and the punishments that he received for failing to comply with those orders, amounted to race discrimination and sex discrimination. Williams also stated that he was being retaliated against for his internal complaints. (Id.). Williams later amended the charge to add allegations concerning his termination. (Doc. 6, Exh. B). Neither the original nor the amended charge mentioned religious discrimination or national-origin discrimination. (Doc. 6, Exhs. A, B).

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). The complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555, 127 S.Ct. at 1964 (quotation omitted). Something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. Id. at 555, 127 S.Ct. at 1964-65.

4

### III. Discussion

#### A. The GDC's grooming policy does not discriminate based upon sex.

The GDC argues that Williams's sex discrimination claim is foreclosed by the former Fifth Circuit's decision in Willingham. That case involved an employee grooming policy enacted by a newspaper, the Macon Telegraph. Willingham, 507 F.2d at 1087. The policy required all employees to be neatly dressed and groomed, and prohibited male employees from wearing hair longer than their shoulders. Id. The grooming policy did not restrict hair length for female employees. Id.

The paper enacted the grooming policy in response to "community indignation" over a music festival where "[b]earded and longhaired youths . . . flooded the countryside." Id. During the festival, "[u]se of drugs and marijuana was open" and "[c]omplete nudity . . . although not common was frequently observed." Id. These "excesses" made a very negative impression on Macon's business community. Id. The Telegraph wanted its male employees to avoid long hairstyles so that potential advertisers would not associate the paper with the "counter-culture types" who had created such a disturbance during the festival. Id.

Willingham was a young man who was denied employment with the Macon Telegraph because his hair was longer than was acceptable under the grooming policy. Id. He filed suit under Title VII, arguing that he had been subjected to sex

5

discrimination because a woman with hair of similar length would have been hired. Id. at 1087-88. The Court of Appeals rejected this claim, ruling that Title VII only covers discrimination based on immutable or other constitutionally-protected characteristics. Id. at 1091. Since hair length is not an immutable characteristic of a person's sex, and is not a fundamental right, the Court held that Title VII did not prohibit the paper from setting different grooming standards for male and female employees. Id. at 1091-92.

Williams argues that this case is distinguishable from Willingham because the Macon Telegraph offered a legitimate business justification for its policy, and the GDC has not come up with a similar justification. (Doc. 8 at 5). I find this argument to be unconvincing for two reasons. First, Willingham does not require an employer to offer a business justification for its policy, so long as the differing standards for men and women are not based on an immutable characteristic or a fundamental right. See Willingham, 507 F.2d at 1091-92.

Second, even if a business justification is required, the GDC has offered one. The GDC states that it wants its employees to maintain a professional appearance since they often have to interact with courts and members of the public. (See Doc. 9-1 at 6-7). Williams might disagree with the GDC's belief that dreadlocks are "unprofessional," but the Court must defer to the employer's judgment as to such matters of taste. See Willingham, 507 F.2d at 1092 (noting that Title VII is not

6

designed to "limit an employer's right to exercise his informed judgment as to how best to run his shop.").

Williams also suggests that "what's good for the goose is good for the gander" and that the prohibition on dreadlocks is discriminatory because it applies to men but not to women. (See Doc. 8 at 5). He contends that the GDC should have adopted a policy similar to that of the DeKalb County Police Department, which prohibits the wearing of dreadlocks by both male and female officers. (See id. at 5 and Exh B). However, the holding of Willingham is that an employer may set different grooming standards for male and female employees. See Willingham, 507 F.2d at 1091-92; see also Gadson v. Ala. Dep't of Corr., No. 2:13-CV-105-VEH, 2013 WL 3879903 (N.D. Ala. July 26, 2013) (dismissing sex discrimination claim challenging Alabama Department of Corrections policy that banned dreadlocks for female employees but did not specify any similar restrictions for male employees). Therefore, Williams cannot establish that his termination for wearing dreadlocks amounted to discrimination, even if the same rule was not applied to female employees. Williams's sex discrimination claim should be dismissed.

### B. Williams has not stated a plausible claim for race discrimination.

Williams also contends that the revised grooming policy discriminates based upon race. He suggests that the policy reflects "stereotyped beliefs regarding

7

African-American males with dreadlocks." (See Doc. 8 at 7).  Once again, however, Williams's claim is foreclosed by the Eleventh Circuit's decision in Williamson.  As noted above, that case holds that an employer may establish differing grooming standards for its employees so long as the differences are not based on immutable characteristics or fundamental rights.  Since hairstyle is neither an immutable characteristic nor a fundamental right, the GDC's policy does not run afoul of Title VII. E.E.O.C. v. Catastrophe Mgmt. Solutions, ___ F.Supp.2d ___, 2014 WL 1347739, at *3-5 (S.D. Ala. Mar. 27, 2014) (dismissing EEOC's race discrimination claim against employer's grooming policy that prohibited the wearing of dreadlocks, and citing similar rulings from other courts)

Moreover, the GDC's policy does more than simply ban dreadlocks.  It requires all male employees to keep their hair neat and clean and prohibits any hairstyles that extend below the collar.  (See Doc. 6, Exh. D-1 at 4).  The GDC has not adopted a policy that specifically targets hairstyles worn by African-Americans, but rather, has adopted a grooming standard applicable to employees of all races.  Nor is there any suggestion in the amended complaint that the policy has been enforced against African-Americans in a selective manner.  In short, the complaint does not plausibly allege that any racial discrimination occurred.  Therefore, Williams's race discrimination claim should be dismissed.

8

### C. Williams has not stated a plausible claim for retaliation.

Williams also asserts that he was fired in retaliation for internal complaints that he filed. (Doc. 6, Amended Complaint ¶¶ 21, 44). In those complaints, he stated that the orders to cut his hair were discriminatory and that he was being subjected to a hostile work environment. (Id. ¶ 21). Title VII prohibits an employer from retaliating against an employee who has opposed an unlawful employment practice. 42 U.S.C. § 2000e-3(a). One way that an employee can oppose an unlawful employment practice is by filing an internal complaint of discrimination with his employer.

For a complaint to constitute protected activity under Title VII, the employee must have a "good faith, reasonable belief" that the employer engaged in unlawful discrimination. Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). The complained-of conduct need not rise to the level of actual discrimination, "but it must be close enough to support an objectively reasonable belief that it is." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1352 (11th Cir. 1999). The reasonableness of the employee's belief is "measured against existing substantive law." Id. at 1351.

Here, Williams may have believed that the orders to cut his hair were discriminatory, but that belief was not objectively reasonable. Willingham squarely holds that employers may adopt different grooming standards for men and women. See

Willingham, 507 F.2d at 1091-92.  In addition, the GDC's policy applies equally to employees of all races, so it was not reasonable for Williams to believe that he had been the victim of race discrimination.  Because Williams did not have a reasonable belief that the GDC had engaged in discrimination, his internal grievances did not amount to protected activity under Title VII.  Therefore, Williams's retaliation claim should be dismissed.

### D. Williams did not administratively exhaust his claims of religious and national-origin discrimination.

An employee who wishes to bring a civil action under Title VII must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  Here, Williams's EEOC charge listed claims of race discrimination, sex discrimination, and retaliation. (See Doc 6, Exhs. A, B).  It did not, however, include claims for religious discrimination or discrimination based on his national origin.  (See id.).  Therefore, those two claims must be dismissed.  See Wilkerson, 270 F.3d at 1317.[3]

---

[3] Williams's amended complaint also briefly states that he was discriminated against due to his culture.  (See Doc. 6, Amended Complaint ¶ 31).  Culture is not a protected category under Title VII, however.  See 42 U.S.C. § 2000e-2(a) (prohibiting discrimination based on "race, color, religion, sex, or national origin").  Therefore, to the extent that Williams is attempting to raise a separate cultural discrimination claim, that claim must be dismissed.

## IV.     Conclusion

For the reasons stated above, I conclude that Williams's amended complaint does not state a viable claim for sex discrimination, race discrimination, or retaliation. In addition, Williams has failed to administratively exhaust his claims for religious and national origin discrimination. Accordingly, I **RECOMMEND** that the GDC's motion to dismiss Williams's amended complaint (Doc. 9) be **GRANTED** and that the amended complaint be **DISMISSED WITH PREJUDICE**. I **RECOMMEND** that the GDC's motion to dismiss Williams's original complaint (Doc. 7) be **DENIED AS MOOT**.

IT IS SO RECOMMENDED this _th day of May, 2014.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)