IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD EARL WILLIAMS,

          Plaintiff,

    v.                                      1:13-cv-03084-WSD

GEORGIA DEPARTMENT OF
CORRECTIONS,

          Defendant.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation ("R&R") [10], recommending that the Defendant's Motion to Dismiss Plaintiff's Amended Complaint [9] should be granted, and that this action should be dismissed with prejudice.

## I.   BACKGROUND

From June 2002, to May 12, 2012, Plaintiff Richard Earl Williams ("Plaintiff"), an African-American male, was employed as a probation officer with the Georgia Department of Corrections (the "GDC" or "Defendant").  In June 2010, GDC management ordered Plaintiff "to cut his hair which [he] wore in a dreadlocks style" "since at least 2004."  (Am. Compl. ¶¶ 18, 29).  Plaintiff

refused because, he claims, to cut his dreadlocks "would violate [his] indelible rights, religious beliefs, and spiritual faith." (Id. ¶ 19). For the next two (2) years, Plaintiff continued to wear his hair in dreadlocks "despite subtle and not so subtle communications from [GDC management] that [they] were extremely upset and displeased with [him] over [his] continued objections and refusal to cut his hair." (Id. ¶ 20). As a result, Plaintiff filed internal grievances stating that the orders to cut his hair were discriminatory and that "he was being subjected to a hostile work environment as a direct result of his refusal to cut his hair. (Id. ¶ 21).

Effective January 1, 2012, Defendant enacted a new grooming policy (the "Policy"), which prohibited male employees from wearing their hair below the top of their shirt collar. (Id. ¶¶ 22-23). The Policy also prohibited male employees from wearing their hair in dreadlocks. (Id. ¶ 24). Female employees, however, "continued to adorn dreadlocks and wear hair styles which extend beyond their collars without reproach by staff management." (Id. ¶ 26).

On January 3, 2012, Chief Vaughn Andrews directed Plaintiff to "leave work, get his dreadlocks cut off, and return to work within two hours." (Id. ¶ 36). Plaintiff refused, and on January 20, 2012, he received a Letter of Reprimand for refusing to cut his dreadlocks, in violation of the Policy. (Id. ¶ 37).

Over the next several months, Plaintiff continued to resist the Policy. On

2

March 2, 2012, he received a "Written Directive" disciplinary action ordering him to cut his dreadlocks.  (Id. ¶ 38).  Once again, he refused, and, on March 16, 2012, he received notice of a 5% reduction in his salary.  (Id. ¶ 39).  On May 13, 2012, Plaintiff was "terminated for refusing to comply with the dress code based on his continued objections and refusal to cut off his dreadlocks."  (Id. ¶ 40).

On April 10, 2012, shortly before his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On the EEOC form, Plaintiff indicated that he was discriminated based on race, sex, and retaliation.  (See [6-2], Ex. B).  He later amended his charge to include allegations regarding his termination.

On June 19, 2013, Plaintiff received a Notice of Right to Sue letter from the EEOC.  (Id. Ex. C).

On September 16, 2013, Plaintiff, proceeding *pro se*, filed his Complaint alleging sex-based employment discrimination.

On January 27, 2014, Plaintiff, now represented by counsel, filed his Amended Complaint [6].[1]  Plaintiff asserts that his employment was terminated

---

[1]      Because Plaintiff filed his Amended Complaint [6], Defendant's Motion to Dismiss the original Complaint [7] is deemed moot.  See, e.g., Sheppard v. Bank of Am., NA, No. 1:11-CV-4472-TWT, 2012 WL 3779106, at *4 (N.D. Ga. Aug. 29, 2012); see also Lowery v. Ala. Power Co., 483 F.3d 1184, (11th Cir. 2007) ("[A]n

because of his race, religion, sex, and national origin, and that he was retaliated

against for filing internal complaints claiming that the orders to cut his hair were

discriminatory, all in violation of Title VII of the Civil Rights Act of 1964

("Title VII").

On March 7, 2014, GDC filed its Motion to Dismiss the Amended

Complaint ("Motion") [9] for failure to state a claim.

On May 12, 2014, the Magistrate Judge issued her final R&R recommending

that Defendant's Motion be granted, and that this action be dismissed with

prejudice.

There are no objections to the R&R.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject, or modify a magistrate

judge's report and recommendation.  28 U.S.C. § 636(b)(1) (Supp. IV 2010);

Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A

---

amended complaint supersedes the initial complaint and becomes the operative
pleading in the case.").

district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).  Neither party filed objections to the R&R.

2.    Motion to Dismiss for Failure to State a Claim

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."   Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

B.   Analysis

1.   Plaintiff's Sexual Discrimination Claim

The Magistrate Judge found that Plaintiff's sex discrimination claim is foreclosed by Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084 (5th Cir. 1975) (en banc).[2] In Willingham, the plaintiff applied for employment with the defendant, a newspaper company, but the defendant refused to hire him. Id. at

---

[2]   In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit issued before the close of business on September 30, 1981.

1086.  The plaintiff in <u>Willingham</u> asserted that the sole basis for defendant's refusal to hire him was "objection to the length of his hair."  <u>Id.</u>  The defendant had enacted a grooming code, which "required employees (male and female) who came into contact with the public to be neatly dressed and groomed in accordance with the standards customarily accepted in the business community, [which] was interpreted to exclude the employing of men (but not women) with long hair."  <u>Id.</u> at 1087.[3]  The plaintiff in <u>Willingham</u> filed suit under Title VII, arguing that he had been subjected to sex discrimination because a woman with hair of similar length would have been hired.  <u>Id.</u> at 1087-88.  The Fifth Circuit rejected this claim, holding that Title VII only covers discrimination based on "immutable" or other constitutionally-protected characteristics.  <u>Id.</u> at 1091.  The Fifth Circuit also reasoned that hair length is not an "immutable" characteristic of a person's sex, nor is it is not a fundamental right, and thus Title VII did not prohibit the defendant from setting different grooming standards for male and female employees.  <u>Id.</u> at

---

[3]       The defendant in <u>Willingham</u> enacted the grooming policy in response to "community indignation" over a music festival where "[b]earded and longhaired youths . . . flooded the countryside."  <u>Id.</u>  At this festival, the use of drugs and complete nudity was common.  <u>Id.</u>  These "excesses" made a very negative impression in the defendant's business community, so the defendant wanted its male employees to avoid long hairstyles so that potential advertisers would not associate the newspaper with "counter-culture types" who had created such a disturbance during the festival.  <u>Id.</u>

1091-92.

The Magistrate Judge found that <u>Willingham</u> is not, as Plaintiff asserts, distinguishable from this action.  First, the Magistrate Judge found that, under <u>Willingham</u>, an employer is not required to offer a business justification for its policy, as long as the differing standards for men and women are not based on an "immutable characteristic or a fundamental right."  <u>See id.</u>  The Magistrate Judge found further that GDC did offer a business justification to support the Policy— that it wants its employees to maintain a professional appearance because they often have to interact with courts and members of the public.

The Magistrate Judge concluded that, under <u>Willingham</u>, an employer may set different grooming standards for male and female employees, and thus Plaintiff cannot establish that his termination for his dreadlock hairstyle amounted to discrimination, even if the same rule was not applied to female employees.  <u>See id.</u> The Court agrees with the Magistrate Judge's well-reasoned analysis and conclusion.  The Court finds no plain error in the Magistrate Judge's findings and recommendation that Plaintiff's sex discrimination claim should be dismissed.[4]

---

[4]     To the extent Plaintiff asserts GDC should have adopted a policy similar to that of the DeKalb County Policy Department, which allows both male and female employees to wear dreadlocks, the Magistrate Judge found that GDC, as an employer, has the authority to set different grooming standards for male and female employees.  The Court finds no plain error in this finding.  <u>See</u> <u>Willingham</u>,

2. <u>Plaintiff's Race Discrimination Claim</u>

The Magistrate Judge determined that Plaintiff's race discrimination claim also is foreclosed by <u>Willingham</u>. <u>See Willingham</u>, 507 F.2d at 1091 ("[A] hiring policy that distinguishes on some . . . ground . . . such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his business than to equality of employment opportunity . . . . Hair length is not immutable and in the situation of employer *vis a vis* employee enjoys no constitutional protection.").  The Magistrate Judge found that the Policy requires that *all* male employees must keep their hair above the collar, and that the Policy does not target hairstyles worn exclusively by African Americans.[5]  Instead, GDC adopted a grooming standard applicable to employees of all races.  A hairstyle, even one more closely associated with a particular racial or ethnic group, is a mutable characteristic not protected by Title VII.  <u>See id.</u>; <u>see also E.E.O.C. v. Catastrophe Mangem. Sol.</u>, No. 13-00476-CB-M, 2014 WL 1347739 (S.D. Ala. Mar. 27, 2014)

---

507 F.2d at 1091; <u>see also Gadson v. Ala. Dep't of Corr.</u>, No. 2:13-CV-105-VEH, 2013 WL 3879903, *3 (N.D. Ala. July 26, 2013) (holding that female employee's "dreadlocks are mutable" and that "she cannot plausibly state a claim for gender discrimination with respect to the [Department of Correction's] prohibition against her wearing dreadlocks, even though the challenged hairstyle policy allegedly only applies to females").

[5]    The Magistrate Judge found that the Complaint does not suggest that Policy has been enforced against African Americans in a selective manner different than other races.  The Court finds no plain error in this finding.

(dismissing claim that grooming policy prohibiting dreadlocks was racially discriminatory because "[a] hairstyle, even one more closely associated with a particular ethnic group, is a mutable characteristic.").  The Court finds no plain error in the Magistrate Judge's findings and recommendation that Plaintiff's race discrimination claim should be dismissed.

### 3.   Plaintiff's Retaliation Claim

Plaintiff asserts that he was fired in retaliation for internal complaints that he filed asserting that the orders to cut his dreadlocks constituted discrimination . (Am. Compl. ¶¶ 21, 44).  Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

An employee engages in protected activity if he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII or Section 1981.  See, e.g., Bryant v. United States Steel Corp., 428 F. App'x 895, 898 (11th Cir. 2011); Little v. United Techs., 103 F.3d 956, 960 (11th Cir. 1997). An internal complaint about unfair treatment or general harassment, without an allegation of discrimination based on race, sex, or national origin, is not protected

activity.  See id. at 436-37 (citing Coutu v. Martin Cnty. Bd. of Cnty Comm'rs,
47 F.3d 1068, 1074 (11th Cir. 1995)).

The Eleventh Circuit broadly construes the causal relationship between
protected activity and an adverse retaliatory action.  See Higdon v. Jackson,
393 F.3d 1211, 1220 (11th Cir. 2004).  A plaintiff, however, still is required to
demonstrate that the plaintiff engaged in protected activity and that there is a
causal connection between the protected activity alleged and an adverse action.
See id.  For an internal complaint of discrimination to constitute protected activity
under Title VII, the employee must have a "good faith, reasonable belief" that the
employer engaged in unlawful discrimination.  Little, 103 F.3d at 960.  The
conduct need not rise to the level of actual discrimination, "but it must be close
enough to support an objectively reasonable belief that it is."  See Clover v. Total
Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1991).  Plaintiff must show "not
only that he subjectively . . . believed that his employer was engaged in unlawful
employment practices, but also that his belief was objectively reasonable in light of
the facts and record presented."  Butler v. Ala. Dept. of Transp., 536 F.3d 1209,
1213, (11th Cir. 2008).  The reasonableness of the employee's belief is "measured
against the existing substantive law."  Id.

The Magistrate Judge acknowledged that Plaintiff may have believed that

the orders to cut his dreadlocks were discriminatory, but found that his belief was not objectively reasonable because <u>Willingham</u> allows employers to adopt different grooming standards for men and women. See <u>Willingham</u>, 507 F.2d at 1091-92. The Magistrate Judge also found that, because the Policy applies equally to employees, male and female, of all races, it was not reasonable for Plaintiff to believe that he had racially discriminated against. The Magistrate Judge concluded that Plaintiff's belief was unreasonable, and thus his internal grievances did not amount to protected activity under Title VII. The Court finds no plain error in the Magistrate Judge's findings or recommendation that Plaintiff's retaliation claim should be dismissed.

4.  <u>Plaintiff's National Origin and Religious Discrimination Claims</u>

Plaintiff's EEOC charge listed claims for race discrimination, sex discrimination, and retaliation. It did not include claims for religious discrimination or discrimination based on his national origin. The Magistrate Judge found that Plaintiff was required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC, and that he failed to do so. See, e.g., <u>H&R Block E. Enters. v. Morris</u>, 606 F.3d 1285, 1295 (11th Cir. 2010) (citing <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir.2001)) ("Before suing under Title VII, a plaintiff must first exhaust her administrative remedies. To do

so, a plaintiff must file a timely charge of discrimination with the EEOC within 180 days of the last discriminatory act." (citation omitted)).  The Court finds no plain error in the Magistrate Judge's findings or recommendation that Plaintiff's claims for discrimination based on religion and national origin should be dismissed.[6]

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation [10] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint [9] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint [7] is **DENIED AS MOOT**.

---

[6]    To the extent Plaintiff asserts that he was discriminated on the basis of culture (Compl. ¶ 31), the Magistrate Judge found that culture is not a protected category under Title VII.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The Court finds no plain error in the Magistrate Judge's finding that culture is not protected under Title VII.

**SO ORDERED** this 13th day of August, 2014.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE